UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| VIRGIL HALL, III, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 3:09-CV-506 JD |
| v. | ) | |
| | ) | |
| SUPERINTENDENT, | ) | |
| | ) | |
| Respondent. | ) | |

<u>OPINION AND ORDER</u>

More than a decade ago, a jury found Virgil Hall, III, guilty of neglecting and murdering his three-year-old step-son, Peyton Fetterhoff. The Grant Circuit Court sentenced him to 65 years under cause number 27C01-0006-CF-35. Having completed his direct and post-conviction appeals, he has now filed this habeas corpus petition raising six grounds for relief. Five of the six grounds were adjudicated on the merits by the state courts.[1]

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 USCS § 2254(d).

The Court of Appeals of Indiana has reviewed this case three times and each time the Indiana Supreme Court denied transfer. In *Hall v. State*, 760 N.E. 2d 688 (Ind. Ct. App. 2002) (hereinafter *Hall I*), the court denied his appeal from the denial of his motion to correct error. ECF 12-5. In *Hall*

---

[1] Ground 3 was not adjudicated by the state courts. *See* Ground 3, *infra*.

*v. State*, 796 N.E. 2d 388 (Ind. Ct. App. 2003) (hereinafter *Hall II*), the court denied his direct appeal. ECF 12-9. In *Hall v. State*, 27A04-0812-PC-740, 2009 WL 2486383, 2009 Ind. App. Unpub. LEXIS 1054 (Ind. Ct. App. August 14, 2009) (hereinafter *Hall III*), the court denied his appeal from the denial of his post-conviction relief petition. ECF 12-12. Relevant facts and applicable legal standards are provided as necessary in each section below.

## Ground 1 - Extrinsic Communications with the Jury

"Hall alleged in his Petition that he was denied an impartial jury due to extrinsic prejudicial information that was conveyed to his jury." Traverse at 12, ECF 24. He argues that the limitations of 28 U.S.C. § 2254(d) are inapplicable because the state court did not adjudicate this claim on the merits. Though he acknowledges that the state court did discuss and deny this claim, he argues that because the decision was based on Indiana law and did not mention the Sixth Amendment, his federal claim was not adjudicated. This is incorrect. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. __, __; 131 S. Ct. 770, 784-85; 178 L. Ed. 2d 624, 639 (2011). Here, there is no indication that this federal claim was denied for a state-law procedural reason. Though the state court did not cite to federal law, the United States Supreme Court has made clear that "a state court need not cite or even be aware of our cases under § 2254(d)." *Id.*, 131 S. Ct. at 784; 178 L. Ed. 2d at 638. Therefore habeas relief can only be granted on this claim if Hall is able to meet one of the exceptions of § 2254(d).

In adjudicating this claim, the state court found "that extrinsic communications concerning a contested matter reached Hall's jury during deliberations." *Hall II*, 796 N.E. 2d at 396. Specifically, the court found that

> during trial juror David Daniels ("Daniels") told alternate juror Gary Hopkins ("Hopkins") that Daniels' stepson was incarcerated with Hall and believed Hall to be innocent. At a later stage of trial, Daniels' stepson and the other inmates changed their opinion and, by this time, believed Hall to be guilty. Although the inmates' subsequent opinions were not communicated directly to Daniels, they were relayed to Daniels' wife, and Daniels overheard his wife giving this information to another family member. Daniels conveyed this information to the remainder of the jury during deliberations.

*Id.* at 393-394 (citations omitted).

> Daniels told Hopkins that his stepson was incarcerated with Hall and believed Hall to be innocent. Hopkins' affidavit also indicates that, during deliberations, Daniels informed the remainder of the jury that his wife had a subsequent conversation with his stepson and his stepson had changed his previous opinion and now believed Hall to be guilty.

*Id.* at 396.

The respondent argues that "[t]here is nothing in the record to support the Court of Appeals' finding that the jury was told that any particular inmates had at some point 'changed their belief' about Hall's guilt or innocence." Return at 22-23, ECF 13. Though it is unclear whether the State of Indiana may collaterally attack the findings of its own courts during a federal habeas corpus proceeding, it is clear that "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Here, the affidavit of Juror C. David Daniels stated that "Tracy [Barber] said to me he was in jail with Virgil Hall, III and Tracy thought he was innocent." Appellant's Appendix at 30. It also stated, "That on another occasion during the trial, I overheard my wife . . . say, Tracy [Barber] had told her the inmates thought Virgil Hall, III was guilty." *Id.* Finally, it says, "[t]hat I told . . . the jury this information." *Id.* Tracy Barber's affidavit

states that during one phone call to his mother, "I told her I thought Virgil Hall, III was innocent . . .." *Id.* at 25. During a later phone call, he, "told her others in the jail had changed their minds about Virgil's innocence and I told her I thought he was guilty." *Id.* Though these statements do not explicitly say that the jury was told that Tracy Barber, or any other inmate, changed his mind, nothing in the record contradicts that possibility. The specific wording of what Daniels said to the other jurors is ambiguous and the State court "had an independent right to draw inferences from the record." *Mendiola v. Schomig*, 224 F.3d 589, 592 (7th Cir. 2000). Though the respondent also points out several inconsistencies with the affidavits, none of them undermine the relevant finding that the jury heard that Hall's fellow inmates thought he was innocent, but later changed their minds and thought he was guilty. Thus, the respondent has presented no basis to believe that this finding was "an unreasonable determination of the facts in light of the evidence presented . . .." 28 U.S.C. § 2254(d)(2).

Having found "juror misconduct involving an out-of-court communication with an unauthorized person," *Hall II* at 394, the Court of Appeals of Indiana explained "that the State should bear the burden of proving that Hall was not prejudiced by the extrinsic communications," *id.*, but that it was constrained by the Indiana Supreme Court opinion in *Griffin v. State*, 754 N.E. 2d 899 (Ind. 2001). "[B]ecause mandatory precedent clearly places the burden of proving prejudice on the defendant, we require Hall to prove he was prejudiced by the misconduct." *Id.* at 396.

Hall argues that placing the burden on him to prove prejudice violated *Remmer v. United States*, 347 U.S. 227 (1954) which held:

> In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during

4

the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.

347 U.S. at 229.

The respondent argues that Hall cannot obtain habeas corpus relief based on *Remmer* because it is not clearly established law. "Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision.'" *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id*. (citing *Bell v. Cone*, 535 U.S. 685, 698 (2002)). The respondent argues that *Remmer*'s allocation of the burden of proof is not clearly established because the Supreme Court's subsequent "intrusion jurisprudence" seems to have abrogated that portion of its holding. Further, respondent argues that the lack of a clearly established rule is demonstrated by a circuit split on the issue.

The court has carefully considered respondent's argument and the case law on which it relies. It is true that later Supreme Court statements contradicted *Remmer*'s placement of the burden of proof. *See Smith v. Phillips*, 455 U.S. 209, 215 (1982) ("[t]his Court has *long held* that the remedy for allegations of juror partiality is a hearing in which *the defendant has the opportunity to prove actual bias*." (emphasis added)); *United States v. Olano*, 507 U.S. 725 (1993) ("[t]here may be cases where an intrusion should be presumed prejudicial[,]" but the ultimate inquiry is "[d]id the intrusion affect the jury's deliberations and thereby its verdict?"); *see also United States v. Williams-Davis*, 90 F.3d 490 (D.C. Cir. 1996) (for a thorough chronological summary of the Supreme Court's

5

intrusion jurisprudence). It is also true that the federal appellate courts have taken diverse approaches to resolving the conflict,[2] and that circuit splits in the absence of a clear statement by the Supreme Court tend to show that a given proposition has not been clearly established. *See, e.g., Kane v. Garcia Espitia*, 546 U.S. 9, 10 (2005) (per curiam) (taking a circuit split into account while holding that Supreme Court case did not clearly establish a right); *Tolliver v. Sheets*, 594 F.3d 900, 916 n. 6 (6th Cir. 2010) ("[w]e may look to decisions by other circuits not as binding precedent on whether a legal principle has been clearly established by the Supreme Court, but rather to inform the analysis of Supreme Court holdings to determine whether a legal principle had been clearly established"); *Holland v. Anderson*, 583 F.3d 267, 282 (5th Cir. 2009) ("clear split" among federal and state courts as to whether defendant possessed a certain right precluded finding that a state court decision was contrary to clearly established federal law); *Hines v. Miller*, 318 F.3d 157, 164 (2d Cir.

---

[2] Some circuits have followed the more recent *Phillips* in its entirety, shifting the burden to the defendant. *See, e.g., Tunstall v. Hopkins*, 306 F.3d 601, 611 (8th Cir. 2002)("[s]ince *Phillips*, we have, with deference to the trial court, required a party to show that outside contact with the jury presents a reasonable possibility of prejudice to the verdict before requiring a hearing."); *United States v. Pennell*, 737 F.2d 521, 532 (6th Cir. 1984) ("[i]n light of *Phillips*, the burden of proof rests upon a defendant to demonstrate that unauthorized communications with jurors resulted in actual juror partiality. Prejudice is not to be presumed."). Indiana's Supreme Court has obviously done the same.

Most Circuits have attempted to reconcile the conflicting case law, either indicating that the court must weigh the likelihood of prejudice before any burden attaches, or forging some other compromise method. *See, e.g., United States v. Sylvester*, 143 F.3d 923, 934 (5th Cir. 1998) (stating "[w]e agree that the *Remmer* presumption of prejudice cannot survive *Phillips* and *Olano*" and holding that "the trial court must first assess the severity of the suspected intrusion; only when the court determines that prejudice is likely should the government be required to prove its absence"); *United States v. Williams-Davis*, 90 F.3d 490, 496 (D.C. Cir. 1996) (noting inconsistency between *Remmer* and *Phillips*, and stating "this court has in fact not treated the supposed 'presumption' as particularly forceful, but rather has accepted the necessity of focusing on the specific facts of the alleged contact[.]"); *United States v. Cheek*, 94 F.3d 136, 141 (4th Cir. 1996) (describing a three-step process for analyzing allegations of extrajudicial juror contact: first, the complaining party must show that the contact was more than innocuous; second, the presumption is triggered; third, the opposing party must prove a lack of prejudice); *United States v. Dutkel*, 192 F.3d 893, 895 (9th Cir. 1999) (distinguishing "prosaic" kinds of jury misconduct, where no presumption attaches, from "jury tampering," where *Remmer* directive controls). The Seventh Circuit usually falls into this "compromise" category. *See United States v. Spano*, 421 F.3d 599, 605 (7th Cir. 2005) (ordinarily when extraneous materials are brought into the jury room, a hearing is required, "[b]ut that is not a hard and fast rule.").

Still other solutions exist. The Tenth Circuit has held, for example, in cases analogous to the one before the court, that the *Remmer* presumption is "a rule of federal criminal procedure, rather than a rule of federal criminal law." *See Crease v. McKune*, 189 F.3d 1188, 1193 (10th Cir. 1999). Accordingly, it does not control in the habeas context.

2003) (habeas relief inappropriate "[g]iven the many divergent approaches and outcomes in federal courts that have applied clearly established Supreme Court precedent to the facts at issue[.]"); *Tunstall v. Hopkins*, 306 F.3d 601, 611 (8th Cir. 2002), *cert. denied*, 538 U.S. 968 (holding that "when the federal courts disagree on the application of *Remmer* regarding any presumption of prejudice, it is difficult to say [a state] court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court.").

Based solely on the foregoing, this court would struggle to independently conclude that no fairminded jurist could disagree about the placement of the burden of proof at a *Remmer* hearing, as is required to grant habeas relief. *Bobby v. Dixon*, No. 10-1540, 2011 WL 5299458 at * 1 (U.S. November 7, 2011) ("[u]nder the Antiterrorism and Effective Death Penalty Act, a state prisoner seeking a writ of habeas corpus from a federal court must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." (internal citations omitted)); *Harrington v. Richter*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.")). Jurists *do* disagree, with at least the Eighth and Sixth Circuit Courts of Appeal joining the Indiana Supreme Court in placing the burden on the defendant pursuant to *Smith v. Phillips*. *See Tunstall*, 306 F.3d at 611; *Pennell*, 737 F.2d at 532. However, the case law in the Seventh Circuit appears clear, and we are bound by our circuit's previous determination that the law has been clearly established. *Tolliver*, 594 F.3d at 916 n.6.

7

In *Wisehart v. Davis*, 408 F.3d 321 (7th Cir. 2005), the Seventh Circuit had occasion to decide what rule, if any, was clearly established by the Supreme Court in *Remmer* and its progeny. Like the petitioner here, the petitioner in *Wisehart* sought habeas relief under *Remmer*'s broad holding that "any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury" triggers a presumption of prejudice that the government must disprove. *Id.* at 326, quoting *Remmer*, 347 U.S. 227, 229. The Seventh Circuit noted that "[r]ipped from its context, the [*Remmer*] statement is difficult to take seriously, because it is so easy to imagine situations in which a 'private communication ... with a juror during a trial about the matter pending before the jury' would not create a rational presumption of prejudice." *Id.* at 326. Concluding that the rule had to be tempered at least somewhat to accommodate for the practical realities of the justice system, the court held that "[i]n short . . . the extraneous communication to the juror must be of a character that creates a reasonable suspicion that further inquiry is necessary to determine whether the defendant was deprived of his right to an impartial jury. How much inquiry is necessary (perhaps very little, or even none) depends on how likely was the extraneous communication to contaminate the jury's deliberations." *Id.*

Although the court in *Wisehart* did not explicitly state that the quoted rule was clearly established by Supreme Court precedent, that is the obvious and necessary implication of the ruling. This was a habeas corpus case governed by the AEDPA, and the state court had decided the case on the merits. The court proceeded to apply the rule to the facts. In *Wisehart*, a juror learned through a private communication that the reason the trial had been adjourned for the day was so that the defendant could take a polygraph test. Though the juror was never told the result of the test, the intrusion "was bad enough to require a hearing, however abbreviated, to determine what impact the

8

news that he had taken the test had on the jury." *Id*. at 328. Furthermore, "it was the state's burden, given [knowledge that word of the test had reached the juror], to present evidence that the jury's deliberations had not been poisoned by the reference to Wisehart's having been given a polygraph test." *Id.* at 327-328. The petitioner's request for relief was granted, and the Seventh circuit directed the state to release Wisehart, to retry him, or to conduct a *Remmer* hearing addressed to the issue of jury bias. *Id*. at 328. We are therefore precedentially bound to treat the *Remmer* rule, as stated in *Wisehart*, as clearly established, and we analyze the state court decision accordingly.

Here, like in *Wisehart*, the information that reached the jury was "of a character that create[d] a reasonable suspicion that further inquiry [was] necessary to determine whether the defendant was deprived of his right to an impartial jury." 408 F.3d at 326. The Indiana Court of Appeals recognized that reality:

> [T]he extraneous information concerned Hall's fellow inmates' opinions of his innocence and guilt. The fact that the inmates lived with Hall and once believed he was innocent, but changed their belief to guilt, renders the impression that the inmates had a special insight into Hall's guilt – seemingly gained as a result of their frequent contact with Hall and ability to see Hall when he had not composed himself for a jury.

*Hall II*, 796 N.E.2d at 398. The court continued, "if the jury allowed themselves to consider this information, there can be little doubt that the information had a prejudicial impact on the verdict obtained." *Id.* In stating as much, the court recognized that this communication was, by its nature, probably prejudicial. Such "probably prejudicial" communications are exactly the sort of contact that, under the rule *Wisehart* held was clearly established by the *Remmer* line of cases, necessitate a hearing at which the state must show that the deliberative process was not actually poisoned. *Wisehart*, 408 F.3d at 326; *Remmer*, 347 U.S. at 229. No such hearing was ordered, and that result is contrary to clearly established law. *Id*.

9

Ordinarily under these circumstances, the court would afford the state an opportunity to conduct the missing *Remmer* hearing. *See Wisehart*, 408 F.3d at 328. Without a developed record, this court would be unable to conclude whether jury deliberations were *actually* tainted by the communication and whether, therefore, Hall's Sixth Amendment right to an impartial jury was *actually* violated. But the Indiana Court of Appeals, believing that – consistent with *Remmer* – the burden should have been placed on the prosecution, explained that "the burden of proof is absolutely pivotal in this case. If we were to place the burden of proof on the State . . . Hall would prevail on this issue and be entitled to a new trial." *Hall II*, 796 N.E.2d at 396 n.7. Thus, the state court determined that, with or without a hearing, the prosecution *could not* meet its burden of proving that the extrinsic communication did not infringe Hall's right to an impartial jury. The respondent has not presented any reason why this court cannot or should not defer to that conclusion, but even if he had, this court would reach the same decision based on an independent analysis of the facts in this case. A hearing would be little more than a formality, with the trial court already bound to find in Hall's favor based on the appellate court decision. Hall is therefore entitled to habeas corpus relief on this claim in the form of either release or retrial.

This court is not insensitive to the difficulties of re-trying a case that was originally tried over a decade ago. Nor is it oblivious to costs that this decision imposes on the State of Indiana or the pain that it will cause the victim's family. Nevertheless, the Indiana Court of Appeals expressed it best when, in 2003, it stated:

> We neither take lightly the impact that such a decision would have on a case involving the murder of a three-year-old nor do we envy the task of our supreme court, should they grant transfer to resolve this issue. Nonetheless, we believe it would be far better for all concerned that Hall's conviction be vacated at such a juncture than at a subsequent one – when memories will have faded and Peyton's

survivors would be faced with the unpleasant task of revisiting his loss after having a significant amount of time to heal.

*Id.* Today is the subsequent time that the Indiana Court of Appeals foresaw. Because "[t]he integrity of jury proceedings must not be jeopardized by unauthorized invasions" *Remmer*, 347 U.S. at 229, habeas corpus relief must be conditionally granted. "Conditional writs enable habeas courts to give States time to replace an invalid judgment with a valid one." *Wilkinson v. Dotson*, 544 U.S. 74, 87 (2005) (Scalia J., concurring). The State of Indiana is free to re-try Virgil Hall, III, providing that it files appropriate documents in the state trial court seeking such relief within 120 days of this Order.

### Ground 2 - Cross-Examination of Kelly Fetterhoff

Hall argues that he was denied his Sixth Amendment right to confront and cross-examine Kelli Fetterhoff. During his trial, "Hall sought to admit alleged evidence of Fetterhoff striking Peyton on the morning of his death as a means of establishing an alternate cause of death." *Hall II*, 796 N.E.2d at 398. Once again, Hall contends that he is entitled to a *de novo* review because the state court did not adjudicate this claim on the merits. As previously explained, 28 U.S.C. § 2254(d) applies even where a state court does not identify the federal basis of the claim. *Richter*, 131 S. Ct. at 784-85; 178 L. Ed. 2d at 639. Here, because there is no indication that this federal claim was denied for a state-law procedural reason, the limitations of § 2254(d) apply. Alternatively, Hall argues that the state court ruling was an unreasonable application of clearly established law.

The United States Supreme Court has made clear that "the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers v. Mississippi.*, 410 U.S. 284, 295 (1973). In addressing this claim on direct appeal, the Court of Appeals of Indiana explained that although

"[b]ias and infirmities in testimony are always relevant; exploration of a theory expounding an impossible cause of death and contradicting the defendant's own theory of the case is not." *Id.*, 796 N.E.2d at 399, n.10. The state court held that testimony about Fetterhoff having hit Peyton earlier in the day was not relevant because the medical evidence indicated that such a blow could not have caused his death. It also reasoned that such testimony would contradict Hall's own statements about how Peyton was injured.

In reviewing a similar Sixth Amendment Confrontation Clause claim, the Seventh Circuit affirmed the denial of a habeas corpus petition by explaining that, "[t]he trial court in the instant case did not exclude vital evidence by applying evidentiary rules in an unyielding or mechanistic fashion. Rather, the court, for good reason, found the evidence at issue to be speculative, remote, and therefore irrelevant, and it applied the state evidentiary rules accordingly." *Hood v. Uchtman*, 414 F.3d 736, 738-739 (7th Cir. 2005). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87; 178 L. Ed. 2d at 641. Here, Hall has not done so. Though there is room to disagree with the decision to exclude Fetterhoff's testimony about having hit Peyton earlier in the day, the trial court's decision to do so was not so lacking in justification that habeas corpus relief can be granted on this ground because "[i]n order for a federal court to find a state court's application of [United States Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins v.*

*Smith*, 539 U.S. 510, 520-521 (2003) (citations omitted). Therefore habeas corpus relief will not be granted on this ground.

### Ground 3 - Exclusion of Expert Testimony by Lawson F. Bernstein, M.D.

This claim is procedurally defaulted. As Hall explains in his traverse, the "Respondent points out that Hall did not present [this ground as] a federal claim to the state court. Hall must concede that Respondent is correct." Traverse at 24, ECF 24. Nevertheless, a habeas petitioner can overcome a procedural default by showing cause and prejudice or by establishing that the court's refusal to consider a defaulted claim on the merits would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006). Hall attempts to make both showings.

Hall argues that he has demonstrated cause and prejudice because his attorney was ineffective for not presenting this claim on direct appeal. Attorney error rising to the level of ineffective assistance of counsel can constitute cause to set aside a procedural default, but to succeed on such a claim Hall must demonstrate that the state courts were unreasonable in adjudicating his ineffective assistance of appellate counsel claim. *See Wrinkles v. Buss*, 537 F.3d 804, 812-13 (7th Cir. 2008). The Court of Appeals of Indiana addressed this ineffective assistance claim; therefore, pursuant to 28 U.S.C. § 2254(d), habeas corpus relief cannot be granted unless that decision was unreasonable. *Wrinkles*, 537 at 812-813.

To demonstrate ineffective assistance of appellate counsel, Hall must show that his appellate counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984). To establish prejudice, "the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt

respecting guilt." *Strickland*, 466 U.S. at 695. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792; 178 L. Ed. 2d at 647.

The Court of Appeals of Indiana explained that the omission of this federal claim during Hall's direct appeal was neither deficient nor prejudicial.

> Appellate counsel argued that the trial court erred by excluding Dr. Bernstein's testimony from the jury, and, in fact, this court agreed, though it found the error to be harmless. Hall argues that appellate counsel should have provided an argument based in federal law in addition to state law on this issue. Given that counsel succeeded with the argument he made, we do not find him ineffective for deciding to forego an argument based in federal law. Furthermore, Hall does not explain why a decision based in federal law would have led this court to conclude the error was anything other than harmless. Therefore, we decline to find ineffective assistance for this reason.

*Hall III*, 2009 WL 2486383, *9, 2009 Ind. App. Unpub. LEXIS 1054 *28. On direct appeal, the state court had previously explained why Hall was not prejudiced by the exclusion of the testimony of Dr. Bernstein.

> Considering all of the evidence in the case, we find the error limiting Dr. Bernstein's testimony sufficiently minor so as not to have affected Hall's substantial rights. Peyton's treating physician and the pathologist who performed Peyton's autopsy both testified that Peyton died as a result of multiple blunt force trauma. In light of the concurring testimony of the physicians who treated Peyton and performed his autopsy, it is unlikely that the jury would have found that Peyton died from a different cause. For this reason, we conclude that the error excluding Dr. Bernstein's theory of Peyton's death did not interfere with Hall's substantial rights.

*Hall II*, 796 N.E.2d at 400 (citations omitted).

Though there is room to disagree as to how much influence Dr. Bernstein's testimony might have had on the jury, there is no merit to Hall's contention that his testimony would have caused the jury to totally disregard the testimony of the state's medical experts. Rather, had the jury heard Dr. Bernstein testify, it would have been faced with resolving these competing expert opinions. Certainly it is conceivable that the jury could have accepted Dr. Bernstein's opinion and acquitted

Hall, but it was not unreasonable for the Court of Appeal of Indiana to have concluded that there was not a substantial likelihood that it would have done so.

For the same reason, Hall is unable to demonstrate that it would be a miscarriage of justice not to consider the merits of this federal claim. To met the miscarriage of justice test, Hall must establish that "a constitutional violation has resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). A petitioner who asserts actual innocence "must *demonstrate* innocence; the burden is his, not the state's . . . ." *Buie v. McAdory*, 341 F.3d 623, 626-27 (7th Cir. 2003) (emphasis in original). Here, the introduction of a divergent expert opinion does not demonstrate innocence. Therefore Hall has not overcome the procedural default and habeas corpus relief cannot be granted on this claim.

<u>Ground 4 - Ineffective Assistance of Trial Counsel</u>

Hall presents a number of reasons why he believes that his trial counsel was ineffective. He also argues that 28 U.S.C. § 2254(d) does not apply to this claim. He recognizes that the state court opinion cited *Strickland*, addressed the merits of this claim, and then denied it. However, he argues that § 2254(d) does not apply because the opinion does not "elaborate on whether there was no deficient performance or no prejudice." However, it is not relevant "whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a 'claim,' not a component of one, has been adjudicated." *Richter*, 131 S. Ct. at 784; 178 L. Ed. 2d at 638. Therefore the state court opinion is entitled to the deference required by § 2254(d).

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. __, __; 130 S. Ct. 1473, 1485; 176 L. Ed. 2d 284, 297 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult [because] . . .

[w]hen § 2254(d) applies [as it does here], the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Richter*, 131 S. Ct. at 788; 178 L. Ed. 2d at 643.

Here, Hall identifies several instances where he argues that his trial counsel was ineffective in regard to the State's medical evidence.[3] He argues that counsel should have more vigorously challenged the expert testimony of Drs. Yablong, Scherer, Luerssen, and Hawley. He argues that counsel should have conducted more extensive pre-trial discovery and investigation related to the medical issues involved with this case. He argues that counsel should have argued that Peyton's death was caused by a medical abnormality with his blood clotting system: Disseminated Intravascular Coagulation (DIC). He argues that counsel should have argued that Peyton's death was the result of the administration of the drug Mannitol.

Each of those claims were considered by the Court of Appeals of Indiana. The court explained "that it is evident that these witnesses were qualified to testify as experts, and any objection to the contrary would certainly have been overruled." *Hall III*, 2009 WL 2486383, *4, 2009 Ind. App. Unpub. LEXIS 1054 *11.

> [H]is attorneys cross-examined both doctors at length and challenged them regarding the cause of death and also presented a photogrammetry expert, who testified that the width of the injuries on Peyton's head were consistent with the width of the bars on the dog cage. It was for the jury to evaluate the competing theories and make the ultimate conclusion. Furthermore, even if Hall's attorneys had objected to this testimony, the objection would have been overruled, inasmuch as this testimony is neither speculative nor false. Instead, it is based on the wealth of experience of these two witnesses. Therefore, we cannot say that trial counsel was ineffective on this basis.

---

[3] In his traverse, Hall withdrew "the subclaims that trial counsel was ineffective in regards to Dr. Hibbard and performance at sentencing." Traverse at 31, ECF 24.

16

*Id.* at WL *5, LEXIS *12-13.

> Hall emphasizes that, at the post-conviction hearing, he offered the testimony of Dr. John Plunkett, who disagreed with Dr. Hawley's conclusions regarding the cause of Peyton's bruises and death. That Dr. Plunkett disagreed with Dr. Hawley does not establish, as contended by Hall, that Dr. Hawley's testimony was inaccurate and misleading. It also does not establish that trial counsel was ineffective for failing to allege that Dr. Hawley's testimony was false, and we decline to find ineffective assistance on this basis.

*Id.* at WL *5, LEXIS *14.

> Hall admits, however, that his attorneys spent considerable time with Dr. Scherer and Dr. Luerssen prior to trial, merely complaining that, in the end, counsel failed to establish that malpractice occurred. That, however, does not mean that counsel was ineffective. And as noted above, trial counsel hired and presented its own expert witnesses, including Dr. Bernstein and a photogrammetry expert.

*Id.* at WL *5, LEXIS *15-16 (quotation marks, brackets, and citation omitted).

> [T]he DIC issue was explored at trial. Dr. Luerssen testified that DIC is a known complication of severe or life-threatening brain injuries. Dr. Hawley testified that Peyton's DIC was not any different from that of other patients who received the extent of medical intervention received by Peyton and that, in his opinion, DIC was not the cause of Peyton's death. Dr. Scherer testified that Peyton's severe head injury caused the DIC and that Peyton died because the injury caused his brain to swell to the point that its blood supply was entirely cut off, not because of DIC.

*Id.* at WL *6, LEXIS *18 (citations omitted). "That the jury ultimately decided that it was Hall's actions, rather than DIC, that caused Peyton's death, does not mean that trial counsel were ineffective." *Id.* at WL *6, LEXIS *19.

> [B]ased upon the evidence establishing that Peyton's injuries were caused by blunt force trauma, the jury could still have reasonably concluded that Hall's initial actions started the chain of events. To break the chain of criminal responsibility, an intervening cause must be so extraordinary that it would be unfair to hold the defendant responsible for the death. Here, Hall has not established that the administration of Mannitol was such an event, given the overwhelming evidence that Peyton was near death when he arrived at the hospital. Therefore, we decline to find ineffective assistance based on his trial attorneys' decision to forego presenting this evidence to the jury.

17

*Id.* at WL *6, LEXIS *17 (citation omitted).

In evaluating an ineffective assistance of counsel claim, there is a strong presumption that counsel acted effectively. *Strickland v. Washington*, 466 U.S. 668, 690 (1984). "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. "There are countless ways to provide effective assistance in any given case." *Id.* "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Richter*, 131 S. Ct. at 788; 178 L. Ed. 2d at 643. Here, Hall has not demonstrated that it was unreasonable for the Court of Appeals of Indiana to have denied his claim that trial counsel was ineffective. Therefore he has not established this as a basis for habeas corpus relief.

<u>Ground 5 - Ineffective Assistance of Appellate Counsel</u>

Hall argues that his appellate counsel was ineffective for not challenging the trial court's failure to give jury instructions on the lesser included offenses of reckless homicide, voluntary manslaughter, and involuntary manslaughter. The Court of Appeals of Indiana rejected the reckless homicide instruction stating, "Given that Hall's theory of the case was that Peyton's death was purely accidental, there was no evidence supporting a jury instruction that related to reckless homicide." *Hall III*, 2009 WL 2486383, *8, 2009 Ind. App. Unpub. LEXIS 1054 *26. It rejected the voluntary manslaughter instruction because the difference between murder and voluntary manslaughter is sudden heat and "there was no evidence of sudden heat . . .." *Id.* Finally, it rejected the involuntary manslaughter instruction because involuntary manslaughter requires that the death be caused by a battery and, "Hall argued that he neither battered Peyton nor killed him." Id. at WL *9, LEXIS *27.

Hall argues that the Court of Appeals of Indiana misapplied State law in deciding whether these lesser included jury instructions should be given. In <u>Lopez v. Thurmer</u>, 594 F.3d 584 (7th Cir. 2010), the Seventh Circuit examined a similar argument.

> Lopez's first argument--that the state appellate court's application of *Strickland* to the facts of his case was unreasonable--cannot overcome a number of hurdles. According to Lopez, the state appellate court applied the wrong standard under Wisconsin law to determine whether he was entitled to a felony-murder instruction: instead of inquiring whether the jury could have found him guilty of first-degree intentional murder, he argues, the state appellate court should have inquired whether the jury could have acquitted him of first-degree intentional murder. But, as Lopez concedes, we may not grant habeas relief under 28 U.S.C. § 2254 merely because a state court has misinterpreted or misapplied state law. And we will not fault counsel as ineffective for failing to advance a position under state law that the state appellate court said was meritless. Because we leave undisturbed the state appellate court's holding that Lopez was not entitled to a felony-murder instruction, its additional ruling that counsel's performance was constitutionally adequate under *Strickland* was reasonable. It is not well outside the boundaries of permissible differences of opinion, to conclude that counsel's performance is constitutionally adequate when he fails to request an instruction that, as a matter of state law, the defendant is not entitled to in the first place.

Id. at 587 (citations omitted). The same analysis is applicable here. The Indiana court found that these instructions were not applicable. Even if that ruling was an incorrect application of Indiana law, that is not a basis for habeas corpus relief. Because the Court of Appeals of Indiana found that Hall was not entitled to jury instructions on these lesser included offenses, his appellate counsel was not ineffective for not having raised these arguments.

<u>Ground 6 - Juror Depositions</u>

Related to his extrinsic jury communications claim in Ground 1, Hall argues that the State court denied his request to depose the jury. Though true, this is not a basis for habeas corpus relief. "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68

(1991). Here, the denial of juror depositions merely denied him the opportunity to gather additional information in support of Ground 1. As such, his efforts to obtain that discovery in the State courts might have permitted him to conduct discovery in this proceeding pursuant to 2254 HABEAS RULE 6 and 28 U.S.C. § 2254(e)(2)(A)(ii). *See Holland v. Jackson*, 542 U.S. 649, 653 (2004) and *Boyko v. Parke*, 259 F.3d 781, 790 (7th Cir. 2001). However, because he has prevailed on Ground 1 without those deposition, the question of additional discovery is moot.

## Certificate of Appealability

To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quote marks and citation omitted). When the court dismisses a petition on procedural grounds, the determination of whether a certificate of appealability should issue has two components. *Id.* at 484–85. First, the petitioner must show that reasonable jurists would find it debatable whether the court was correct in its procedural ruling. *Id.* at 484. Next, the petitioner must show that reasonable jurists would find it debatable whether the petition states a valid claim for denial of a constitutional right. *Id.* To obtain a certificate of appealability, the petitioner must satisfy both components. *Id.* at 485.

Here, the court has denied the writ on five of the six grounds: three on the merits and two on procedural grounds. For the reasons previously explained, reasonable jurists would not disagree that Ground 2 was properly resolved on the merits. Neither would they disagree that Grounds 3 and 6 were properly dismissed for procedural reasons. Grounds 4 and 5, addressing ineffective assistance

of counsel claims, are different. Even if no jurist would reach a different conclusion, because reasonable jurists could debate how much the jury could have been influenced by additional information and jury instructions, a certificate of appealability will issue as to those two grounds.

<u>Conclusion</u>

For the foregoing reasons, habeas corpus is conditionally **GRANTED** on Ground 1 and **DENIED** on all other grounds. The State of Indiana may re-try Virgil Hall, III, providing that it files appropriate documents to do so in the State trial court within 120 days of this Order. The respondent is **ORDERED** to file a notice in this court within 150 days of this Order demonstrating that Virgil Hall, III, has either been released or that the State of Indiana has initiated re-trial proceedings against him. A Certificate of Appealability is **DENIED** on Grounds 2, 3, and 6, but **GRANTED** on Grounds 4 and 5.

SO ORDERED.

ENTERED: November 29, 2011

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court